UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PIKE COUNTY, PENNSYLVANIA, | |
| Plaintiffs, | CIVIL ACTION NO. 3:23-CV-01906 |
| v. | (MEHALCHICK, J.) |
| GREAT MIDWEST INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court are a motion for leave to file an amended answer and counterclaim filed by Defendant Great Midwest Insurance Company ("Defendant" or "Great Midwest") on March 29, 2024 (Doc. 17) and a motion to strike Defendant's reply brief filed by Plaintiff Pike County, Pennsylvania ("Plaintiff" or "Pike County") on May, 24, 2024 (Doc. 28). Plaintiff filed a complaint on June 21, 2023, against Defendant in the Court of Common Pleas of Pike County Pennsylvania ("State Court Action"). (Doc. 1, ¶ 1; Doc. 1-4). On November 16, 2023, Defendant removed this case to federal court in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Defendant filed its original answer on November 20, 2023. (Doc. 3). In its proposed amended answer, Defendant seeks to add a counterclaim for indemnity based upon its contractual agreement with Plaintiff. (Doc. 17-1, at 22-26). In its reply brief, Defendant additionally argues that it is entitled to common law indemnity. (Doc. 24, at 4). Plaintiff moves to strike the portion of Defendant's reply brief that raises arguments for common law indemnity, as Plaintiff contends these are novel arguments, inappropriate for a reply brief. (Doc. 28, at 5-9). For the following reasons, the motion for

leave to amend shall be **DENIED** (Doc. 17) and the motion to strike shall be **DENIED as moot**. (Doc. 28).

I. **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Plaintiff's complaint. (Doc. 1-4). Plaintiff provides participants its Health Plan ("Health Plan"), through which Highmark offers participants access to a managed care network of healthcare providers. (Doc. 1, ¶ 13). Plaintiff does not directly employ staff to review, conduct cost-control, or properly pay healthcare bills pursuant to the Health Plan. (Doc. 1, ¶¶ 10-11). Plaintiff instead contracts with HealthNow Administrative Services ("HealthNow") to handle administration and determination of costs for medical services submitted by providers. (Doc. 1, ¶ 12). To prevent "explosive healthcare costs," Plaintiff purchased a stop loss insurance policy from Defendant, which requires Defendant to reimburse Plaintiff for the costs of medical services rendered under the Health Plan to a plan participant once costs exceed a pre-determined threshold. (Doc. 1, ¶¶ 12-14). Plaintiff avers that Defendant denied benefits to Plaintiff that Plaintiff was entitled to under the stop loss insurance policy without a reasonable basis. (Doc. 1, ¶ 2). On June 21, 2023, Plaintiff filed its complaint in state court alleging breach of contract claims pursuant to Pennsylvania law against Defendant and seeking damages and recovery of allegedly overdue payments owed to it under the stop loss policy. (Doc. 1, at 4, 18). After removing this matter to federal court, Defendant filed its original answer to Plaintiff's complaint with affirmative defenses on November 20, 2023. (Doc. 3).

On March 29, 2024, Defendant filed the instant motion. (Doc. 17). In the motion, Defendant seeks to amend its answer in order to add a counterclaim for contractual indemnity based upon its agreement with Plaintiff, in which Plaintiff is required to indemnify Defendant

for losses related to Plaintiff's own negligence. (Doc. 17-1, at 22-26). Plaintiff avers that amendment would be futile as Defendant's amendment fails to state a claim under the 12(b)(6) standard applied to amendments vulnerable to denial for futility. (Doc. 21, at 6-7, 11). Thus, Plaintiff argues that the motion should be denied. (Doc. 21, at 11). In response, Defendant maintains that its proposed counterclaim does sufficiently allege facts required to state a claim, specifically focusing on common law indemnity. (Doc. 24, at 4). The motion has been fully briefed and is ripe for disposition.[1] (Doc. 17; Doc. 17-1; Doc. 21; Doc. 24).

## II. LEGAL STANDARD FOR FAILURE TO STATE A CLAIM

To assess the sufficiency of a claim under a Rule 12(b)(6) standard, a court must first take note of the elements a party must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding whether a party has stated a claim under a Rule 12(b)(6) standard, the court may consider the facts alleged on the face of the complaint, or in this case, counterclaim, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[1] In the reply brief, Defendant raises for the first time that it is not only entitled to contractual indemnity, but also common law indemnity. (Doc. 24, at 4). In response, Plaintiff filed a motion to strike, or in the alternative, a motion for leave to file a sur-reply based on the new arguments made by Defendants in its reply brief. (Doc. 28). The Court declines to address or consider any new arguments raised in Defendant's reply brief. *See Anspach v. City of Philadelphia*, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it"). Consequently, the proposed arguments that would be presented in the sur-reply do not impact the Court's analysis. Therefore, Plaintiff's motion is **DISMISSED as moot**. (Doc. 28).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The party asserting the claim must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a party can prove facts that the party has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the [party asserting a claim] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the asserted claim, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the asserting party. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016)

(internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.   DISCUSSION**

Defendant moves to file an amended answer to add a counterclaim for indemnity based upon its contractual agreement with Plaintiff. (Doc. 18, at 1-3). Defendant contends that it should be able to add the counterclaim because the litigation is in its early stages and the counterclaim "arises out of the transaction or occurrence that is the subject matter of [Plaintiff's] claim and does not require adding another party." (Doc. 18, at 1-2). Plaintiff opposes Defendant's motion to add its counterclaim, reasoning that the proposed amendment is futile. (Doc. 21, at 11).

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within the earlier of 21 days after service of a responsive pleading or a Rule 12(b)(6) motion.9 "In all other cases," amendment may only be achieved through the opposing party's written consent or the Court's leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, courts should grant leave to file amended pleadings freely. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("Leave to amend 'shall be freely given when justice so requires.'") (quoting Fed. R. Civ. P. 15). However, "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment,'" a court should not grant leave to amend. *Handle v. Brennan*, No. CV 15-8071 (BRM), 2017 WL 3473999, at *3 (D.N.J. Aug. 11, 2017), *aff'd sub nom. Handle v. Postmaster Gen., United*

5

*States Postal Serv., 806 F. App'x 95 (3d Cir. 2020)* (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Defendant's original answer stated the following in its affirmative defenses section: "Plaintiff's claims are barred, in whole or in part, because Plaintiff agreed to hold [Defendant] harmless and indemnify [Defendant" and "Plaintiff's claims are barred, in whole or in part, due to the terms of the stop loss policy[.]" (Doc. 3, ¶¶ 9, 11). Defendant quotes the hold harmless contractual provision that references indemnity:

> "The Policyholder agrees to indemnify and hold the Company harmless for: (a) liability related to any negligence, error, omission or intentional misconduct of the Policyholder or its Designated Third Party Administrator or (b) any legal expenses incurred, reasonable settlements made, or judgment(s) awarded, arising out of any dispute involving a participant or former participant of the Policyholder's Employee Benefit Plan provided such legal expenses, settlements, or judgments were not incurred as a result of the sole negligence or intentional wrongful acts of the Company."

(Doc. 3, ¶¶ 9).

Defendant now seeks to transform this affirmative defense into a counterclaim by way of amendment. (Doc. 17-1; Doc. 18). Defendant's proposed amended answer is different from its original answer in only one respect: the addition of its counterclaim for Count I – Indemnity. (Doc. 3; Doc. 17-1, at 22-25). The counterclaim provides, in relevant part:

> "4. The stop loss policy at issue in this lawsuit includes a contractual indemnity provision:
>> [']The Policyholder agrees to indemnify and hold the Company harmless for: (a) liability related to any negligence, error, omission or intentional misconduct of the Policyholder or its Designated Third Party Administrator or (b) any legal expenses incurred, reasonable settlements made, or judgment(s) awarded, arising out of any dispute involving a participant or former participant of the Policyholder's Employee Benefit Plan provided such legal expenses, settlements, or judgments were not incurred as a result of the sole negligence or intentional wrongful acts of the Company.[']
> [. . .]

12. Under the stop loss policy, Pike County is required to indemnify and Great Midwest negligence, errors, omissions or intentional misconduct of itself or HealthNow. Pike County and/or HealthNow committed negligence, errors, omissions or intentional misconduct that caused the requests for reimbursement to be ineligible under the stop loss policy or prevented any requests for reimbursement from being found to be eligible under the stop loss policy.

13. Pike County and/or HealthNow have prejudiced Great Midwest and caused Great Midwest to incur fees and costs in defending itself in this action although Pike County is responsible for its and HealthNow's negligence, errors, omissions and intentional misconduct. The issues complained of by Pike County in this lawsuit are due to its and/or HealthNow's negligence, errors, omissions or intentional misconduct.

14. Per the stop loss policy Pike County sues upon, Pike County is required to hold Great Midwest harmless and indemnify Great Midwest."

(Doc. 17-1, ¶¶ 4, 12-14).

Here, the Court agrees that Defendant's counterclaim would be futile as it fails to state a claim upon which relief can be granted. (Doc. 17-1, at 22-25); *see Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) ("Amendment would be futile if the amended [claim] would not survive a motion to dismiss for failure to state a claim.") (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir.2010)).

To reiterate, the parties dispute whether Defendant's counterclaim for indemnity based upon the parties' insurance contract is futile for failure to state a claim. (Doc. 21, at 6-7, 11; Doc. 24, at 4). Plaintiff submits the indemnity claim is futile because the indemnity provision in the insurance contract does not make sense in the context of first party claims, those between the two parties to the contract. (Doc. 21, at 7, 11). Defendant argues that the provision does apply to first party claims like the one at issue here. (Doc. 24, at 9).

To establish a cause of action for a contractual indemnity claim under Pennsylvania law,[2] a plaintiff must show that the intent to indemnify is clear and unambiguous from the terms of the contract. *See Norristown On-Site, Inc. v. Reg'l Indus., L.L.C.*, No. CV 19-369, 2020 WL 4592745, at *8 (E.D. Pa. Aug. 10, 2020) ("For an indemnification provision, the intent to indemnify for the particular claim must be clear from the terms of the agreement.") (citing *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 43 (Pa. Super. 1997)). Additionally, while interpreting contractual language, courts should interpret terms consistent with their plain meaning and "each and every part of [the contract] must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Marcinak v. Southeastern Greene Sch. Dist.*, 544 A.2d 1025, 1027 (Pa. Super. 1988); *see also Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982); *Norristown*, 2020 WL 4592745, at *8. "Pennsylvania courts require an indemnity agreement to be strictly construed against the party asserting it." *Norristown*, 2020 WL 4592745, at *8 (citing *Kiewit Eastern Co., Inc. v. L & R Constr. Co., Inc.*, 44 F.3d 1194, 1202-03 (3d Cir. 1995)).

Defendant interprets some of the terms of the stop loss policy correctly but fails to take into consideration "every part" of the contract, by only referring to the first paragraph of the indemnity provision. (Doc. 17-1, ¶ 4). Defendant cites only the first paragraph of the indemnity/hold harmless provision when arguing for indemnification, asking that this Court rely solely on the following language:

> The Policyholder agrees to **indemnify and hold the Company harmless** for: (a) liability related to any negligence, error, omission or intentional misconduct of the Policyholder or its Designated Third Party Administrator or (b) any legal expenses incurred, reasonable settlements made, or judgment(s) awarded,

---

[2] The Court applies Pennsylvania law to this matter because the parties' contract agreement notes that Pennsylvania law will govern it and the parties do not dispute this point. (Doc. 1-4, at 30, 33; Doc. 21, at 13).

8

arising out of any dispute involving a participant or former participant of the Policyholder's Employee Benefit Plan provided such legal expenses, settlements, or judgments were not incurred as a result of the sole negligence or intentional wrongful acts of the Company.

(Doc. 17-1, ¶ 4) (emphasis added).

Defendant alleges that "[p]er the stop loss policy Pike County sues upon, Pike County is required to hold Great Midwest harmless and indemnify Great Midwest." (Doc. 17-1, ¶ 14). At the outset, Third Circuit precedent requires this Court to interpret "hold harmless" provisions to limit the clause's effect to third-party indemnification. *See Travelers Indem. Co.*, 594 F.3d at 255 (holding that indemnification clauses which include the terms "defend" and "hold harmless," mean that "the only sensible reading of [the] clause evidences a requirement that third-party liability exist for the clause to be triggered"). However, further complicating Defendant's interpretation applying the indemnification clause to the instant first party claims is the second paragraph of the hold harmless provision that Defendant omitted, which states,

> The **Company**, following any notification of its being named, or likely to be named, as a defendant on any action concerning the aforementioned dispute will within a reasonable time, in writing, **notify the Policyholder of the dispute**. **The Company will cooperate with the Policyholder** in matters pertaining to the dispute, however, such cooperation with the Policyholder will not waive the right of the Company to solely defend or settle any action in a manner it deems prudent.

(Doc. 1-4, at 47) (emphasis added).

As Plaintiff notes, this second paragraph requires Defendant to notify Plaintiff after it has been sued and cooperate with Plaintiff. (Doc. 21, at 16). If this indemnification clause was meant to apply to first party claims, or those brought by Plaintiff, it would not be necessary for Defendant to "notify" Plaintiff of the claim. Plaintiff would already necessarily be aware of matters to which it is a party. Courts in the Third Circuit have similarly held that when surrounding contractual language suggests that indemnification logically applies to third-

9

party claims, the indemnification clause is not properly applied to first-party claims. *See Norristown*, 2020 WL 4592745, at *8 (finding that an agreement for a defendant to cooperate with a plaintiff and for a plaintiff to hold a defendant harmless within an indemnity agreement "does not make sense in the context of first-party claims. Taking into account 'each and every part of' the indemnification provision, [] it is clear that it is intended to apply to third-party claims, and not to [first-party claims]") (quoting *Marcinak*, 544 A.2d at 1027); *see also Exelon Generation Co., LLC v. Tugboat DORIS HAMLIN*, No. CIV.A. 06-0244, 2008 WL 2188333, at *2 (E.D. Pa. May 27, 2008) ("a common sense reading of the language [hold harmless] suggests that [the indemnity clause] refers only to third party claims."); *Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 180 (3d Cir. 2011) (holding that Third Circuit decisions have foreclosed the argument "that indemnification clauses might apply to first-party disputes between parties to a contract"); *Equitrans Servs., LLC v. Precision Pipeline, LLC*, 154 F. Supp. 3d 189 (W.D. Pa. 2015) (finding that an indemnity agreement did not apply to a first party claim when language in the agreement made the most sense in the context of only third-party claims). Thus, because the language of the indemnification clause and the contract as a whole only make sense in the context of third-party claims, this Court does not find it unambiguous that an intent to indemnify Defendant against Plaintiff's claims is clear from the terms of the contract. (Doc. 1-4, at 47); *see Norristown*, 2020 WL 4592745, at *8. As such, Defendant has failed to state a claim for indemnity and the proposed amendment is therefore futile. (Doc. 17-1); *see Budhun,* 765 F.3d at 259. Accordingly, Defendants' motion to file an amended answer is **DENIED**.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for leave to file an amended answer

and counterclaim is **DENIED**. (Doc. 17). Plaintiff's motion to strike Defendant's reply brief is **DENIED as moot**. (Doc. 27).

    An appropriate Order follows.

                                          **BY THE COURT:**

Dated: January 13, 2025                        *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**